**HONOLULU LUMBER CO., Ltd.,**
**Plaintiff,**

v.

**AMERICAN FACTORS, LTD., City Mill Co., Ltd., Hawaii Builders Supply Co., Ltd., Island Lumber Co., Ltd., Lewers & Cooke, Ltd., Mid Pac Lumber Co., Ltd., and Does One through Two Hundred, inclusive, Defendants.**

**Civ. No. 2002.**

United States District Court
D. Hawaii.

Dec. 29, 1966.

Arthur H. Tibbits, San Francisco, Cal., for plaintiff.

Gilbert E. Cox, Smith, Wild, Beebe & Cades, Honolulu, Hawaii, for American Factors.

Leslie W. S. Lum, Honolulu, Hawaii, for City Mill Co.

Ralph T. Yamaguchi, Yamaguchi & Tanaka, Honolulu, Hawaii, for Hawaii Builders Supply Co.

Hiroshi Sakai, Honolulu, Hawaii, for Island Lumber Co., Ltd.

George L. T. Kerr, Henshaw, Conroy & Hamilton, Honolulu, Hawaii, for Mid Pac Lumber Co., Ltd.

Daniel H. Case, Pratt, Moore, Bortz & Vitousek, Honolulu, Hawaii, for Lewers & Cooke, Ltd.

## DECISION

PENCE, Chief Judge.

On October 28, 1966, this court denied plaintiff's petition to proceed on appeal in forma pauperis for reasons set forth hereafter. At the outset, this court is satisfied that the appeal has been taken in good faith.

### I.  *Nature of Litigation*

Plaintiff in this action is a domestic corporation incorporated in 1959 under the laws of Hawaii and formerly engaged as a wholesaler and retailer of lumber products in Honolulu. On November 30, 1961, plaintiff instituted this private antitrust action for damages against several of Hawaii's largest corporations, which were direct competitors of plaintiff in the building supply industry, under sections 4 and 16 of the Clayton Act, c. 323, 38 Stat. 731 and 737, 15 U.S.C. §§ 15 and 26.

### II.  *Prior History of Litigation*

On June 24, 1966, Shim & Naito, Esqs., plaintiff's local counsel,[1] withdrew from the lawsuit. On August 25, 1966, defendants filed a motion to dismiss the action for failure to prosecute, and for plaintiff president's willful failure to appear for the taking of his duly noticed deposition. On September 2, 1966, defendants' motion to dismiss was heard. Plaintiff's chief counsel Tibbits, a California attorney, did not attend, but instead merely sent a telegram which arrived the morning of September 2 and said: "UNABLE TO ATTEND CONFERENCE TUESDAY. AIRMAILED PLAINTIFFS PRETRIAL STATEMENT MEMORANDUM AND AFFIDAVITS. ARTHUR H. TIBBITS." After a hearing, the court granted defendants' motion to dismiss, but without prejudice, under Fed.R.Civ.P. 37(d) and 41(b). Plaintiff's pretrial statement and memorandum in opposition to defendants' motion to dismiss were received and filed on September 6, 1966.

On September 10, 1966, plaintiff filed a motion to vacate the dismissal and for rehearing on defendants' motion to dismiss. Plaintiff's motion was set for hearing on September 20, 1966. When September 20 arrived, however, plaintiff's attorney Tibbits once again was not present. Instead, Louis Blissard, Esq., a member of the bar of this court, relayed a message from Mr. Tibbits. The court construed Mr. Blissard's message as a plaintiff's motion for a continuance, which was granted. The case was continued for six additional days, until September 26, 1966 at 9:00 A.M., and the court ordered the clerk to notify Mr.

---

1. Rule 1(e) of the Rules of Civil Procedure for the United States District Court for the District of Hawaii provides as follows:

   "*Permission to Participate in a Particular Case.*

   Any member in good standing of the bar of any court of the United States or of the highest court of any state, but not an active member of the bar of this court, may, upon oral or written motion, be granted permission to participate in the conduct of a particular case in this court, but such motion shall be allowed only if such attorney associates with him an active member of the bar of this court, who shall at all times meaningfully participate in the preparation and trial of the case."

Tibbits of the hearing date. On September 26, 1966, Mr. Tibbits did not appear for the third time, despite the court's admonitions the previous week. Following the testimony of Alvin Shim, Esq., the court denied plaintiff's motion to vacate the dismissal and for rehearing on defendants' motion to dismiss. The court then ordered a dismissal of the action with prejudice. On October 12, 1966, a petition to proceed on appeal in forma pauperis was filed by plaintiff's counsel.

The first question presented by this petition is whether a corporation is entitled to appeal in forma pauperis under 28 U.S.C. § 1915.

### III. Proceedings in Forma Pauperis

#### 1. Statutory Language

Section 1915 of Title 28 U.S.C., which governs proceedings in forma pauperis in the federal courts, provides:

"Any court of the United States may authorize the commencement, prosecution or defense of any suit * * * without prepayment of fees and costs or security therefor, by a *person* who makes affidavit that he is unable to pay such costs or give security therefor." 28 U.S.C.A. § 1915(a). (Emphasis added.)

Plaintiff has argued that a corporation is a "person" within the meaning of 28 U.S.C. § 1915, and therefore qualifies for in forma pauperis treatment. This argument would be an extension of 1 U.S.C. § 1, which provides that in "determining the meaning of any Act * * * of Congress, unless the context indicates otherwise * * * the words 'person' and 'whoever' includes corporations * * * as well as individuals." Case-Swayne Co. v. Sunkist Growers, Inc., 9 Cir., 369 F.2d 449 (decided November 21, 1966).

■■ The right to proceed in forma pauperis is statutory in nature and rests within the sound discretion of the trial court. Broad though the statute may appear, petitions to sue in forma pauperis in civil actions for damages are allowed only in exceptional circumstances. Weller v. Dickson, 9 Cir., 1963, 314 F.2d 598.

#### 2. Legislative History

■■ An examination of the statutory language and legislative history of 28 U.S.C. § 1915 indicates that Congress never intended to include corporations as a "person" within the meaning of this statute. Congress first enacted in forma pauperis legislation by the Act of July 20, 1892. That statute used the word "citizen" instead of "person", and since Chief Justice Marshall so ruled in Bank of the United States v. Deveaux, 5 Cranch 61, 3 L.Ed. 38 (1809), it has been settled that a corporation is not a citizen as that word is used in the Constitution. Atlantic S.S. Corporation v. Kelley, 5 Cir., 1935, 79 F.2d 339; Quittner v. Motion Picture Producers and Distributors of America, Inc., 2 Cir., 1934, 70 F.2d 331. Thus, at its inception the Act was never intended to confer in forma pauperis privileges to corporations.

In 1959, the statute was amended by substituting "person" for "citizen", for the very specific and limited purpose of permitting resident aliens to sue in forma pauperis. Pub.L. 86–320; 73 Stat. 590. As stated in the Senate Report:

"The legislative proposal recommended by the Department of Justice would substitute the word 'person' for the word 'citizen'. Thus, indigent aliens would be extended the same privilege of proceedings in forma pauperis as is now afforded citizens. It is the opinion of the Department of Justice that this proposal would be consonant with the ideas or policies of the United States." 2 U.S.Code Congressional and Administrative News 1959, p. 2664.

It thus appears that Congress never intended by this single word change in 1959 to extend this privilege to a whole new class of artificial persons. 105 Cong.Rec. 13714; 105 Cong.Rec. 18909–10.

### IV. Discretionary Grounds for Denial

Even if the statute were construed as authorizing corporations to sue in forma pauperis, this court would nevertheless,.

for the reasons indicated hereafter, in its discretion, deny plaintiff's petition in this case.

### 1. *Interested Parties*

██ An examination of the Corporation Exhibits on file at the Hawaii State Archives reveals that, except for a $200 investment by one person, the entire stock in this corporation is held by its president, Preston Low, and two other individuals also named Low, living in the same general community in California. There is no showing that this small group, who would benefit directly and exclusively from any recovery awarded (allegedly amounting to several hundred thousand dollars when trebled), is financially unable to pay the expenses of this suit. If Honolulu Lumber were a partnership, instead of a corporation, affidavits of poverty would certainly be required from each person directly interested in the litigation. While affidavits of poverty might not be required from all stockholders in every case in which a corporation is involved (assuming a corporation could sue in forma pauperis), in the case of this closely-held corporation, there is no reason why the true beneficiaries should be allowed to stand behind a corporate veil and thereby be excused from paying the legal costs of a suit which the corporation they controlled decided to institute. There are times when the corporate veil is rightly to be pierced, and this case is clearly one of them.

### 2. *Untimely Petition*

Plaintiff's chief problem appears to stem from a lack of money to get counsel into this court. In his affidavit, the corporation president declares that the corporation became insolvent, liquidated its assets, and has not engaged in business since August 1964. Since that date, he states, the corporation "has been and now is without any funds whatsoever to pay counsel fees [or] expenses of litigation." Affidavit of Preston Low (R. 430). It would appear that if there were any real merit in plaintiff's contentions, application for assistance of the court under 28 U.S.C. § 1915(d) should have been made long prior to the final dismissal of the action. Assuming once again that a corporation could sue in forma pauperis, Title 28 U.S.C. § 1915 (d) provides that, upon a proper showing, the court may appoint an attorney to represent an indigent person.[2]

██ Plaintiff was free, under this theory, to come into court and request the appointment of local counsel in a forma pauperis petition, and due diligence would dictate that this application thus should have been made during the normal course of the litigation. Since the corporation has failed to take advantage of the statutory benefits it now claims under 28 U.S.C. § 1915(d), despite ample opportunity to do so over a period of more than two years, the plaintiff in this case has not made timely use of the privileges it claims is conferred on it by the statute.

Further, this court has not overlooked the allegations of corporate poverty made by plaintiff's attorney Tibbits and its Pacific-hopping President Low on October 12, 1966, as contrasted with the prior statements of the same California attorney filed on September 6, 1966, that plaintiff was ready for trial, that mainland counsel would try the case with assistance of local counsel, that its President Low would be in Honolulu, and that at least six other witnesses would be subpoenaed. At that prior time no complaint of corporate poverty or inability to meet the very obvious and considerable expenses of trial was even suggested.

Plaintiff's petition to proceed on appeal in forma pauperis is hereby denied.

---

2. 28 U.S.C. § 1915(d) provides as follows:
"The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."